Slip Op. 20-126

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **RED SUN FARMS,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Before: Jennifer Choe-Groves, Judge** |
| **Defendant,** | **Court No. 19-00205** |
| **and** | |
| **THE FLORIDA TOMATO EXCHANGE,** | |
| **Defendant-Intervenor.** | |

### OPINION AND ORDER

[Granting Defendant's motion to dismiss.]

Dated:  August 26, 2020

Valerie Ellis, Daniel Porter, and Kimberly Reynolds, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., for Plaintiff Red Sun Farms.

Elizabeth Anne Speck, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States.  On the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.  Of counsel was Emma T. Hunter, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Jonathan M. Zielinski, Robert C. Cassidy, Jr., Charles S. Levy, James R. Cannon, Jr., and Mary Jane Alves, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor The Florida Tomato Exchange.

Choe-Groves, Judge:  Plaintiff Red Sun Farms (Naturbell SPR DE RL, San Miguel Red

Sun Farms SPR DE RL DE CV, Agricola El Rosal SA DE, Jem D International Michigan Inc.,

and Red Sun Farms Virginia, LLC, collectively d/b/a Red Sun Farms) ("Plaintiff" or "Red Sun

Farms") challenges the final determination made by the United States Department of Commerce

("Commerce") in the resumption of the previously suspended antidumping duty investigation on

imports of fresh tomatoes from Mexico.  Compl. ¶¶ 1–2, ECF No. 8; <u>Fresh Tomatoes from

Mexico</u>, 84 Fed. Reg. 57,401 (Dep't Commerce Oct. 25, 2019) (final determination of sales at

less than fair value) ("<u>Final Determination</u>").  Specifically, Red Sun Farms pleads jurisdiction

under 28 U.S.C. § 1581(c), Compl. ¶ 2, to contest Commerce's respondent selection decision, <u>id.</u>

¶¶ 31–35; use of April 1, 2018 through March 31, 2019 as the period of investigation, <u>id.</u> ¶¶ 36–

40; differential pricing analysis, <u>id.</u> ¶¶ 41–46; margin calculation methodology, <u>id.</u> ¶¶ 47–52; all

others rate calculation, <u>id.</u> ¶¶ 53–58; continuation of the investigation, <u>id.</u> ¶¶ 59–63; and failure

to assign Red Sun Farms an exporter-specific cash deposit rate, <u>id.</u> ¶¶ 64–69.  Red Sun Farms

requests in pertinent part that the court find Commerce's final determination unlawful and, on

remand, order Commerce to issue revised final results and applicable rates.  <u>Id.</u>, Prayer for J. and

Relief.

       Before the court is Defendant United States' ("Defendant") motion to dismiss Red Sun

Farms' Complaint for lack of subject matter jurisdiction and for failure to state a claim upon

which relief can be granted.  Def.'s Mot. to Dismiss Br., ECF No. 26 ("Def. Br.").  Red Sun

Farms opposed.  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl., ECF No. 42

("Opp'n Br.").  Defendant replied.  Def.'s Reply in Supp. of its Mot. to Dismiss Pl.'s Compl.,

ECF No. 46 ("Def. Reply").[1]  For the reasons that follow, the court grants Defendant's motion to

dismiss.

---

[1] Defendant-Intervenor The Florida Tomato Exchange ("Defendant-Intervenor" or "FTE")
"support[s] the entirety of the United States' motion and agree[s] with the arguments presented
therein."  Def.-Intervenor's Resp. 1, ECF No. 41 ("Def.-Intervenor Br.").

I.      **BACKGROUND**

    **A.  History of the Fresh Tomatoes from Mexico Antidumping Duty Proceeding**

      Commerce's investigation of fresh tomatoes has a long procedural history.  In April

1996, Commerce initiated an antidumping duty investigation to determine whether imports of

fresh tomatoes from Mexico were being, or likely to be, sold in the United States at less than fair

value.  Fresh Tomatoes from Mexico, 61 Fed. Reg. 18,377 (Dep't Commerce Apr. 25, 1996)

(initiation of antidumping duty investigation).  After a preliminary determination from the

International Trade Commission ("ITC"), Commerce made a preliminary determination that

imports of fresh tomatoes from Mexico were being sold in the United States at less than fair

value.  Compl. ¶ 5; Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,608 (Dep't Commerce Nov.

1, 1996) (preliminary determination).  That same day, Commerce published a notice in the

Federal Register announcing an agreement to suspend the antidumping duty investigation on

fresh tomatoes from Mexico.  Compl. ¶ 13; Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,618

(Dep't Commerce Nov. 1, 1996) (suspension of antidumping investigation).

      After entering the suspension agreement in 1996, Commerce and the signatories[2] entered

into a series of suspension agreements after the Mexican exporters and producers of fresh

tomatoes gave notice of intent to withdraw from the operative suspension agreement in 2002,

2007, and 2013.  See Fresh Tomatoes from Mexico, 84 Fed. Reg. 20,858, 20,859–61 (Dep't

---

[2] The term "signatory" or "signatories" mentioned throughout the various suspension agreements refers to "producers/exporters accounting for substantially all imports of fresh tomatoes from Mexico."  Fresh Tomatoes from Mexico, 84 Fed. Reg. 49,987, 49,987 (Dep't Commerce Sept. 24, 2019) (suspension of antidumping duty investigation); Fresh Tomatoes from Mexico, 78 Fed. Reg. 14,967, 14,968 (Dep't Commerce Mar. 8, 2013) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 73 Fed. Reg. 4831 (Dep't Commerce Jan. 28, 2008) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 67 Fed. Reg. 77,044 (Dep't Commerce Dec. 16, 2002) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 61 Fed. Reg. at 56,619.

Commerce May 13, 2019) (termination of suspension agreement, rescission of administrative

review, and continuation of the antidumping duty investigation) ("May 2019 Withdrawal

Notice") (explaining the history of the proceedings).[3]

### B. Commerce's Withdrawal from the 2013 Suspension Agreement, Continuation of the Underlying Investigation, and Signing of the 2019 Suspension Agreement

Under Section VI.B of the 2013 Suspension Agreement, a signatory can withdraw upon

giving 90 days' written notice.  Commerce gave the signatory Mexican tomato growers and

exporters notice of intent to withdraw from the 2013 Suspension Agreement on February 6,

2019.  May 2019 Withdrawal Notice, 84 Fed. Reg. at 20,860.  Commerce then withdrew from

the 2013 Suspension Agreement, effective May 7, 2019, and continued the underlying

antidumping investigation.  Id.; Compl. ¶ 24.

Commerce published a notice in the Federal Register with an effective date of September

19, 2019, announcing that "Commerce and representatives of the signatory producers/exporters

accounting for substantially all imports of fresh tomatoes from Mexico signed" an agreement to

suspend the antidumping duty investigation.  Fresh Tomatoes from Mexico, 84 Fed. Reg. at

49,989.  No party challenged Commerce's decision to suspend the investigation.  The ITC also

announced the suspension of its antidumping investigation as of September 24, 2019.  Fresh

Tomatoes from Mexico, 84 Fed. Reg. 54,639 (Int'l Trade Comm'n Oct. 10, 2019) (suspension of

anti-dumping investigation).

---

[3] Each time the signatory Mexican producers/exporters withdrew from the relevant suspension agreement the parties negotiated and entered into a new suspension agreement, and, in 2002, 2008, and 2013, new suspension agreements went into effect.  Fresh Tomatoes from Mexico, 67 Fed. Reg. 77,044 (Dep't Commerce Dec. 16, 2002) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 73 Fed. Reg. 4831 (Dep't Commerce Jan. 28, 2008) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 78 Fed. Reg. 14,967 (Dep't Commerce Mar. 8, 2013) (suspension of antidumping investigation).

### C.  Commerce's Final Determination

After signing the 2019 Suspension Agreement, Red Sun Farms and FTE each requested that Commerce continue its antidumping duty investigation under 19 U.S.C. § 1673c(g).  Final Determination, 84 Fed. Reg. at 57,402.  On October 25, 2019, Commerce published its affirmative Final Determination.  Id.; Compl. ¶ 29.  The ITC issued an affirmative injury determination on December 12, 2019.  Fresh Tomatoes from Mexico, 84 Fed. Reg. 67,958 (Int'l Trade Comm'n Dec. 12, 2019) (notice of material injury determination).

### D.  Red Sun Farms' Claims

Red Sun Farms filed the Summons in this action on November 25, 2019, ECF No. 1, and filed a complaint challenging Commerce's final determination in the continued fresh tomatoes investigation on December 26, 2019, ECF No. 8.  Specifically, Red Sun Farms avers that "Commerce's Final Determination is arbitrary and capricious, an abuse of discretion and or [sic] not supported by substantial evidence on the record and is otherwise in accordance with law."  Compl. ¶ 30.  In particular, Red Sun Farms contests Commerce's respondent selection decision, id. ¶¶ 31–35; use of April 1, 2018 through March 31, 2019 as the period of investigation, id. ¶¶ 36–40; differential pricing analysis, id. ¶¶ 41–46; margin calculation methodology, id. ¶¶ 47–52; all others rate calculation, id. ¶¶ 53–58; continuation of the investigation, id. ¶¶ 59–63; and failure to assign Red Sun Farms an exporter-specific cash deposit rate, id. ¶¶ 64–69.  Red Sun Farms requests in pertinent part that the court find Commerce's final determination unlawful and order Commerce on remand to issue revised final results and applicable rates.  Id., Prayer for J. and Relief.  Red Sun Farms does not challenge the 2019 Suspension Agreement.  Opp'n Br. at 7 ("What is of concern to [Red Sun Farms] is the final determination changing the margins and the reasoning underlying the calculation of those margins.").

## II.   LEGAL STANDARDS

Article III of the Constitution limits federal courts to hearing actual, ongoing

controversies.  Davis v. FEC, 554 U.S. 724, 732 (2008).  An actual case or controversy must be

extant at all stages of review, not merely at the time the complaint is filed.  Id. at 732–33; see

DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (noting that the

Court is "presumed to be without jurisdiction unless the contrary appears affirmatively from the

record" (internal quotation marks and citations omitted)).  "Though justiciability has no precise

definition or scope, doctrines of standing, mootness, ripeness, and political question are within

its ambit."  Fisher v. United States, 402 F.3d 1167, 1176 (Fed. Cir. 2005).

The party invoking jurisdiction bears the burden of establishing it.  Hutchinson Quality

Furniture Inc. v. United States, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (internal quotation marks

and citation omitted).  A plaintiff must allege sufficient facts to state each claim alleged in the

complaint.  DaimlerChrysler Corp., 442 F.3d at 1318–19 (citing, inter alia, McNutt v. Gen.

Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  "If the court determines at any time that it

lacks subject-matter jurisdiction, the court must dismiss the action."  USCIT R. 12(h)(3).

## III.   DISCUSSION

Defendant argues that the challenge to the Final Determination does not present a live

case or controversy because Red Sun Farms pays no antidumping duties, as certain entities

comprising Red Sun Farms are signatories to the 2019 Suspension Agreement.  Def. Br. at 11–

12.  Defendant and Defendant-Intervenor point out that Red Sun Farms cannot challenge the

Final Determination unless and until the 2019 Suspension Agreement ends and Commerce thus

issues the antidumping duty order.  See id.; Def.-Intervenor Br. at 3.  Defendant also argues that

even if the claims are justiciable, the allegations raised in the Complaint are time-barred because

Red Sun Farms did not file the Summons challenging the 2019 Suspension Agreement within 30

days of that agreement's publication in the Federal Register (here, by October 24, 2019), as

required under 19 U.S.C. § 1516a.  Def. Br. at 12–16; Def.-Intervenor Br. at 3–4.

Red Sun Farms responds that the 2019 Suspension Agreement has no impact on its

claims challenging the <u>Final Determination</u> "because the controversy here is definite and

concrete, and not abstract or hypothetical."  Opp'n Br. at 12.  Red Sun Farms argues that the

filing of the Summons on November 25, 2019 renders its claims timely under 19 U.S.C.

§ 1516a(a)(2)(A)(i)(I) because the filing occurred within 30 days after publication of the notice

of Commerce's <u>Final Determination</u> in the Federal Register.  Opp'n Br. at 12–13.[4]

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by

the challenging parties."  <u>Nat'l Park Hosp. Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 807–08

(2003) (internal quotation marks and citations omitted); <u>Martin v. United States</u>, 894 F.3d 1356,

1362 (Fed. Cir. 2018).  Two criteria guide a court in determining ripeness: "(1) the fitness of the

---

[4] Defendant and Defendant-Intervenor also assert that Red Sun Farms' decision to forgo challenging the 2019 Suspension Agreement precludes the court from adjudicating the claims here because Red Sun Farms did not assert a timely challenge to the 2019 Suspension Agreement.  Def. Br. at 14; Def.-Intervenor Br. at 3.  Red Sun Farms argues that 19 U.S.C. § 1516a(a)(2)(B)(iv) does not require a tandem challenge for "judicial review of Commerce's determination to suspend an investigation and of Commerce's 'final determination resulting from a continued investigation' that changes the margins from those used at the time the investigation was suspended."  Opp'n Br. at 4; <u>see also</u> <u>id.</u> at 7 ("What is of concern to [Red Sun Farms] is the final determination changing the margins and the reasoning underlying the calculation of those margins.").

Case 1:19-cv-00205-JCG   Document 51   Filed 08/26/20   Page 8 of 10

Court No. 19-00205                                                                    Page 8

issues for judicial decision and (2) the hardship to the parties of withholding court

consideration." Id. at 808.

In this case, Plaintiff's claims challenging the Final Determination are not ripe.  As to the

fitness of the issues for judicial review, Red Sun Farms' legal challenge rests on the development

of an extensive factual record for which the particularity of a concrete harm is absent.  Next, Red

Sun Farms cannot satisfy the hardship requirement because Red Sun Farms is not currently

paying antidumping duties.  Specifically, three entities that make up Red Sun Farms—Naturbell

SPR DE RL, San Miguel Red Sun Farms SPR DE RL DE CV, and Agricola El Rosal SA DE

CV—are signatories to the 2019 Suspension Agreement as members of the Asociación Mexicana

de Horticultura Protegida, A.C. ("AMHPAC"), an association of individual Mexican fresh

tomato growers that is a signatory to the 2019 Suspension Agreement.[5]  Fresh Tomatoes from

Mexico, 84 Fed. Reg. at 49,994; see Compl. n.1, CAADES, Court No. 19-00203, ECF No. 14,

ECF No. 14-1 (identifying the individual members and associations as signatories to the 2019

Suspension Agreement).[6]  AMHPAC and the other associations of individual Mexican fresh

tomato growers who signed the 2019 Suspension Agreement "certif[ied] that the members of

their organization agree to abide by all terms of the Agreement."  Fresh Tomatoes from Mexico,

84 Fed. Reg. at 49,994.

---

[5] AMHPAC is also a party plaintiff in cases challenging Commerce's withdrawal of the 2013
Suspension Agreement, finalization of the 2019 Suspension Agreement, and the Final
Determination in the continued fresh tomatoes investigation in AMHPAC v. United States, Court
No. 20-00036, and Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C. v.
United, Court Nos. 19-00203 and 19-00206 ("CAADES").

[6] Section II.E of the 2019 Suspension Agreement identifies CAADES, AMHPAC, and three
other entities as "a Mexican grower association whose members produce and/or export Fresh
Tomatoes from Mexico and are also Signatories to this Agreement[.]"  Fresh Tomatoes from
Mexico, 84 Fed. Reg. at 49,990.

Plaintiff does not dispute that three of its entities are members of AMHPAC or that

AMHPAC signed the 2019 Suspension Agreement on behalf of its three members.  Given that

entities comprising Red Sun Farms signed the 2019 Suspension Agreement, that the 2019

Suspension Agreement bars Commerce from levying duties on signatories to that agreement, and

that the Final Determination has no effect unless and until Commerce issues an antidumping

order, the court concludes that Red Sun Farms' claims do not present a live case or controversy.

See, e.g., Usinas Siderúrgicas de Minas Gerais S/A v. United States, 26 CIT 422, 431 (2002) ("A

continued final affirmative determination [made after Commerce resumed an investigation after

finalizing a suspension agreement] has no practical effect, unless and until the related suspension

agreement is dissolved . . . .  Thus, many of the same jurisprudential concerns that militate

against piecemeal litigation also weigh against litigation of . . . a challenge which is not yet (and

may never be) ripe.") ("Usinas").[7]

Plaintiff may seek to challenge the Final Determination after its entities withdraw from

the 2019 Suspension Agreement and after Commerce issues an antidumping order.  Fresh

Tomatoes from Mexico, 84 Fed. Reg. at 49,994 (Under Section XI.B, "[a]n individual Signatory,

or Signatories, collectively, or Commerce may withdraw from this Agreement upon 90 days'

written notice to Commerce or the Signatories, respectively.").  Absent that type of event

occurring, the court cannot review the challenged aspects of the Final Determination that have no

effect so long as the 2019 Suspension Agreement remains in force.  See Usinas, 26 CIT at 431.

---

[7] Red Sun Farms argued that the claims were ripe even though certain of its entities signed the
2019 Suspension Agreement since "several members of Defendant-Intervenors, the Florida
Tomato Exchange, also have affiliated farms in Mexico who are members of the signatory
associations."  Opp'n Br. at 15.  The court finds no merit in Red Sun Farms' contention.  FTE is
neither is a signatory to the 2019 Suspension Agreement, nor is FTE a named party challenging
the 2019 Suspension Agreement or the Final Determination.

In short, Red Sun Farms cannot have it both ways: it cannot obtain the benefits of paying zero antidumping duties under the 2019 Suspension Agreement while maintaining an after-the-fact challenge to the <u>Final Determination</u>, which currently has no impact.  Accordingly, the court concludes that Plaintiff's claims are not yet (and may never be) ripe.

## IV.    CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's motion to dismiss is granted and Plaintiff's Complaint is dismissed with prejudice.  Judgment will enter accordingly.

   <u>   /s/ Jennifer Choe-Groves   </u>
Jennifer Choe-Groves, Judge

Dated:   <u>   August 26, 2020   </u>
New York, New York